IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GEORGE CONNER,

     Plaintiff,

v.                               No. 08-1146

CITY OF JACKSON, TENNESSEE and
JERRY GIST, in his individual and official
capacity as Mayor of the City of Jackson,

     Defendants.
_____

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
_____

<u>INTRODUCTION AND BACKGROUND</u>

On June 18, 2008, the Plaintiff, George Conner, initiated this action against the Defendants,

the City of Jackson, Tennessee (the "City") and Jerry Gist, in his individual and official capacity as

Mayor of Jackson.  The complaint, as amended on February 19, 2009, alleged violations of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Civil

Rights Act of 1866, as amended, 42 U.S.C. § 1981; the Tennessee Human Rights Act, § 4-21-701

("THRA") and Tennessee common law.  The Plaintiff also sought punitive damages.  In an order

entered June 9, 2009, this Court dismissed Conner's claims for race discrimination regarding alleged

wrongful demotion under the THRA as time-barred and for hostile work environment under Title

VII for failure to exhaust administrative remedies.  The Court also declined to exercise jurisdiction

over his claims of intentional infliction of emotional distress and outrageous conduct brought

pursuant to the Tennessee Governmental Tort Liability Act.  Before the Court is the Defendants'

motion for summary judgment as to the Plaintiff's remaining claims, under Rule 56 of the Federal

Rules of Civil Procedure.

SUMMARY JUDGMENT STANDARD

Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

FACTS

Prior to setting forth the facts in this case, the Court deems it necessary to address an

2

objection made by the Plaintiff in his response to the motion for summary judgment to the affidavit

of City Personnel Director Lynn Henning submitted by the Defendants in support of their motion,

along with the documents attached thereto.  Rule 56(e) requires in pertinent part that

> [a] supporting . . . affidavit must be made on personal knowledge, set out facts that
> would be admissible in evidence, and show that the affiant is competent to testify on
> the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn
> or certified copy must be attached to or served with the affidavit.

Fed. R. Civ. P. 56(e)(1).  The Sixth Circuit has ruled that "documents submitted in support of a

motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise they must be

disregarded."  Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir. 1993).  "To be admissible in summary

judgment, documents must be authenticated by and attached to an affidavit that meets the

requirements of Rule 56(e) . . ."  In re Oliver, ___ B.R. ___, 2009 WL 1475046, at *4 (Bkrtcy. E.D.

Tenn. May 22, 2009) (citation omitted).  "Upon a party's objection, documents filed in support of

or in opposition to a motion may not be considered by the court unless they have entered the record

as attachments to an appropriate affidavit and would be admissible in evidence."  Id. (citation and

internal quotation marks omitted).

Conner submits that, even though Henning states in the first paragraph of her affidavit that

she is "competent to make this affidavit and has personal knowledge of the facts set forth herein"

and that the exhibits attached thereto are "maintained in the ordinary course of business," she does

not offer how she has personal knowledge of the documents or how she knows they are kept in the

ordinary course of business.  In doing so, he cites to Rule 901 of the Federal Rules of Evidence and

cases involving hearsay.  The attachments at issue include City job posting notices, a memorandum

from the Plaintiff to Fire Chief Kenneth W. Lay setting forth his interest in the Fire Inspector

position, City Personnel Action Notice forms for the City Fire Department, a grievance filed by the

Plaintiff addressed to Henning, a memorandum from Henning to Fire Chief Mike Morgan concerning Conner's grievance, excerpts from the City Fire Department Policy and Procedure Manual, a memorandum from Conner to Fire Chief Morgan, a Fire Department Promotion Process for Position of Driver Score Summary and the City's Employee Handbook.

In determining the existence of personal knowledge, "an important consideration is whether [the affiant] was employed in a position where [she] can be presumed to have gained personal knowledge of the relevant facts during the relevant times." In re Consol. FGH Liquidating Trust, No. 01-52173 EE, 2009 WL 982889, at *7 (Bkrtcy. S.D. Miss. Apr. 1, 2009). With respect to hearsay, such evidence cannot be considered in ruling on a motion for summary judgment. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). Hearsay is defined in the Federal Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial of hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Fed. R. Evid. 803(6) establishes an exception to the hearsay rule for

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . ., unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6).

In order to satisfy the business records test and, therefore, be admissible under Rule 803(6),

> (1)    [the document] must have been made in the course of a regularly conducted business activity;

(2)     [the document] must have been kept in the regular course of that business;

(3)     the regular practice of that business must have been to have made the memorandum; and

(4)     the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

United States v. Weinstock, 153 F.3d 272, 276 (6th Cir. 1998); Nair v. Columbus State Cmty. Coll., No. 2:02-cv-595, 2008 WL 3822341, at *13-14 (S.D. Ohio Aug. 12, 2008).  "Business records meeting the criteria set forth in [the Rule] are admissible unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  Pullins v. Klimley, No. 3:05-CV-082, 2008 WL 85871, at *32 (S.D. Ohio Jan. 7, 2008) (citation and internal quotation marks omitted).   "The trial court is given 'great latitude' on evidentiary rulings regarding trustworthiness and federal law favors admission of evidence which has any probative value."  Id. (citing United States v. Hathaway, 798 F.2d 902, 906 (6th Cir. 1986)).

Under Rule 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  By way of illustration, authentication conforming with subsection (a)'s requirement includes "[t]estimony that a matter is what it is claimed to be."  Fed. R. Evid. 901(b)(1).   The court may take into account a document's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances."   Fed. R. Evid. 901(b)(4).   The burden of proof for authentication is "slight."  Gregg v. Ohio Dep't of Youth Servs., ___ F. Supp. 2d ___, 2009 WL 3100602, at *5 (S.D. Ohio Sept. 22, 2009).  That is, "a party need only put forth enough evidence that a reasonable juror could find the document is what it is purported to be."  Chao v. USA Mining,

<u>Inc.</u>, Nos. 1:04-CV-1, 1:04-CV-138, 2007 WL 208530, at *16 (E.D. Tenn. Jan. 24, 2007) (citing <u>United States v. Jones</u>, 107 F.3d 1147, 1150 n.1 (6th Cir. 1997)).

In this case, the Court first finds that the affidavit is based on personal knowledge. As Personnel Director during the period of time at issue, Henning can be presumed to have gained personal knowledge of the facts contained in her affidavit and of the documents attached to the affidavit, all of which pertain to personnel matters. <u>In re Consol. FGH Liquidating Trust</u>, 2009 WL 982889, at *7. The Plaintiff has offered nothing to suggest otherwise. Moreover, a review of the documents indicates that they are in accordance with Rule 56(e). Many bear the official seal or letterhead of the City of Jackson and, therefore, bear indicia of regular business activity. *See* <u>Nair</u>, 2008 WL 3822341, at *14 (distinguishing document on official letterhead or bearing some other indicia of regular business activity to those that do not satisfy the <u>Weinstock</u> factors). The memoranda were either prepared by Henning or written and signed by Conner himself. The Plaintiff has not attacked the authenticity of any of these documents directly. Nor has he challenged their status as business records. Thus, as it appears to the Court that the documents fall within the ambit of the business records exception and have been properly authenticated and the Plaintiff has failed to demonstrate anything to the contrary, they may be considered in determining the motion for summary judgment.

The facts in this case, undisputed unless otherwise noted, are as follows. The City's Fire Department is organized into two divisions: the Administrative Division and the Operational Division. (Aff. of Lynn Henning ("Henning Aff.") at ¶ 3.) The former generally operates from 8:00 a.m. to 5:00 p.m. Monday through Friday, while the latter works ten twenty-four hour days per month. (Henning Aff. at ¶ 3.) The Administrative Division includes the Fire Chief, the Operations

Chief, the Administration, the Fire Prevention Bureau and the Training Division.  (Henning Aff. at ¶ 3.)  The Operations Division includes, in ascending order, the rankings of Firefighter, Driver, Captain and Battalion Chief.  (Henning Aff. at ¶ 3.)  Chief Wayne Arnold, a white male, has been the Fire Marshal since 2004.  (Aff. of Wayne Arnold ("Arnold Aff.") at ¶ 2.)  He also serves as the Chief of the Fire Prevention Bureau.  (Arnold Aff. at ¶ 2.)  The Plaintiff, a black male, was hired by the City as a Firefighter in the Operations Division on March 26, 1996.  (Henning Aff. at ¶ 4.)

In July 2004, the City posted on the bulletin board of the fire station in which Conner worked a notice for a position of Fire Inspector I in the Fire Prevention Bureau.  (Henning Aff. at ¶ 5.)  On July 14, 2004, the Plaintiff advised then Fire Chief Lay, a black male, of his intention to apply for the position.  (Henning Aff. at ¶ 6; Dep. of George Conner ("Conner Dep.") at 38.)  The Fire Inspector I job went to Lamar Childress, a white male.  (Conner Dep. at 41.)  In 2005, Lay left the City and was replaced by Morgan, a white male.  (Henning Aff. at ¶ 8.)  Another position for Fire Inspector I opened in 2005.  (Conner Dep. at 43-44.)  On the advice of Arnold, Morgan chose Conner from the list generated by the 2004 hiring process for the position, which the Plaintiff accepted.  (Arnold Aff. at ¶4, Conner Dep. at 43-44.)  The Plaintiff signed a document entitled "Conditions of Interdepartmental Transfer" on November 4, 2004, stating in part that

> I am requesting a transfer from the Operations Divisions [sic] of the Jackson Fire Department to the position of Inspector in the Fire Prevention Bureau with the understanding that I do not have transfer privileges back to the Operations Division.
>
> I understand that if my work is unsatisfactory as noted by my supervisor, and a management decision is made to remove me from the position of Inspector in the Fire Prevention Bureau, that I may request a transfer to an open position (that is to be filled) if I meet the qualifications and specifications as described in the job posting, in the Fire Department or any other department of the City of Jackson.

(Defs.' Mot. for Summ. J., Ex. 5.)  Prior to his starting date in the Fire Inspector I position, Henning

explained to him that he had twenty-four months from the date of his transfer to the position to pass the ICC level I and II certification tests in order to keep his job.  (Conner Dep. at 46-47, Henning Aff. at ¶ 10.)  If he failed to do so, he would be placed back in line for an open position.  (Conner Dep. at 47.)

Conner was officially transferred to the Fire Inspector I position on May 21, 2005 by Morgan.  (Henning Aff. at ¶ 9.)  Arnold was his immediate supervisor.  (Henning Aff. at ¶ 9.) Conner was provided with a letter outlining the materials he needed to study for the open book test two weeks before it was administered in October 2005.  (Conner Dep. at 85-86.)  He insists, however, that the letter did not mention materials he needed for the second part of the test, leaving him unprepared for that portion.  (Conner Dep. at 86-87.)  According to the Plaintiff, two large spiral notebooks containing the 2003 editions of the International Fire Code ("IFC") and the International Building Code ("IBC") were located on Conner's desk when Arnold first opened up his office. (Conner Dep. at 59-61, 64-65).  Arnold handed Conner a 2000 edition, making no mention of the 2003 books.  (Conner Dep. at 65.)  He also studied the sixth edition of a code enforcement guide he borrowed from the fire station.  (Conner Dep. at 77.)

Arnold stated in his affidavit that the City provided Conner with the 2003 books and the sixth edition of the International Fire Service Training Association's Fire Inspection and Code Enforcement book.  (Arnold Aff. at ¶ 7.)  He insisted that he gave the Plaintiff a copy of the 2000 IFC "only to familiarize him with the testing process, as [Arnold] instructed [Conner] that he would be responsible for the 2003 IFC and the 2003 IBC."  (Arnold Aff. at ¶ 8.)  Arnold advised the Plaintiff that he would allow him two hours of each work day for study.  (Conner Dep. at 68; Arnold Aff. at ¶ 9.)

8

The Plaintiff was permitted to ride with City Inspector Terrisia Reasons to issue a burn permit and inspect a sprinkler system.  (Arnold Aff. at ¶ 10.)  Conner also worked with Ben Smith, a City Building Department employee, on an inspection, observed inspections with the City of Memphis, Tennessee Fire Department, and worked with Childress.  (Conner Dep. at 131-32; Arnold Aff. at ¶¶ 11-13.)

Conner took the ICC level I test in October 2005, at the expense of the City, but did not pass.  (Conner Dep. at 102; Arnold Aff. at ¶¶ 14-15.)  He again studied from materials provided by the City and retook the test in July 2006, failing again.  (Arnold Aff. at ¶ 16.)  The City paid for the second test.  (Arnold Aff. at ¶ 16.)  At that point, Conner obtained permission from Morgan and Arnold to attend at City expense an ICC Inspector I course in Bell Buckle, Tennessee, which he completed.  (Arnold Aff. at ¶ 17.)  He also took at City expense a 2006 Fire Inspector I certification exam practice course.  (Arnold Aff. at ¶ 17.)  At the request of Arnold, the City went outside its policy and paid for Conner to take the test a third time in December 2006.  (Arnold Aff. at ¶ 18.)  Again, he failed.  (Arnold Aff. at ¶ 19.)  In January 2007, Arnold provided Conner with a new set of codes dated 2006.  (Conner Dep. at 139-40; Arnold Aff. at ¶ 21.)  The Plaintiff declined to take the test a fourth time.  (Conner Dep. at 133.)

On April 20, 2007, the Plaintiff filed a grievance with Henning.  (Henning Aff. at ¶ 11.)  A hearing was conducted on April 30, 2007.  (Henning Aff. at ¶ 11.)  On May 19, 2007, Conner was returned to the position of Firefighter.  (Am. Compl. at ¶ 16.)  He filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 21, 2007.  (Am. Compl. at ¶ 17.)  The Plaintiff filed a second charge on November 28, 2007 alleging retaliation for filing the earlier charge.  (Defs.' Statement of Undisputed Material Facts in Supp. of their Mot. for Summ. J.,

Ex. 8.)

Pursuant to City personnel policy, Fire Department employees were to be evaluated on an annual basis during the month of their hiring anniversary. (Henning Aff. at ¶ 14.) Evaluations were completed by the employee's supervisor, who then reviewed the evaluation with the employee and submitted it to the Fire Chief prior to the end of the month. (Henning Aff. at ¶ 14.) Arnold failed to comply with the policy in that Conner's 2005-06 and 2006-07 performance evaluations were not completed until July 20, 2006 and April 5, 2007, respectively. (Henning Aff. at ¶ 15.) Moreover, he did not review either evaluation with the Plaintiff. (Henning Aff. at ¶ 15.)

In 2007, Conner wrote to Morgan advising him of his desire to participate in the promotional process from Firefighter to Driver. (Henning Aff. at ¶ 16.) The promotional process for the position of Driver was outlined in City personnel policy number 4-034, which provided that the Personnel Director was to prepare a list of Firefighters eligible for the Driver position from overall scores based on testing, assessment, a personnel file review, certification levels attained and seniority. (Henning Aff. at ¶ 17.) Conner's 2005-06 and 2006-07 performance evaluations were included in the personnel file review portion of the promotion process. (Henning Aff. at ¶ 19.) The list was to be composed of the top fifty percent of applicants based on the scores. (Henning Aff. at ¶ 17.) The process was completed in August 2007 with Conner receiving a score of 73.49, which ranked him twenty-second of thirty-four applicants. (Henning Aff. at ¶ 18.) The ranking did not place him in the top fifty percent of applicants and, therefore, the Plaintiff was not included on the Driver eligibility list, pursuant to the personnel policy. (Henning Aff. at ¶ 18.)

<u>ANALYSIS OF PARTIES' CLAIMS</u>

<u>Race Discrimination under Title VII and § 1981.</u>

Statutory Provisions.

Section 1981, in relevant part, provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ."  42 U.S.C. § 1981(a).  "The rights protected under [§ 1981] are protected against impairment by nongovernmental discrimination . . ."  42 U.S.C. § 1981(c).  The statute is applicable to claims of racial discrimination in the employment context.  *See* Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004), *cert. denied,* 546 U.S. 821, 126 S. Ct. 353, 163 L. Ed. 2d 62 (2005).  Title VII, in general, forbids an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Individual Liability of Defendant Gist.

It is argued on behalf of Defendant Gist that Title VII does not provide for individual liability.  Plaintiff's counsel makes no effort to dispute this assertion, which the Court finds to be correct.  *See* Wathen v. General Elec. Co., 115 F.3d 400, 405-06 (6th Cir. 1997) (individual employer/supervisor may not be held personally liable under Title VII).  Accordingly, the Plaintiff's individual liability claim against Gist under Title VII is DISMISSED.

However, unlike Title VII, individuals may be sued for violations of § 1981.  Wagner v. Merit Distrib., 445 F. Supp. 2d 899, 909 (W.D. Tenn. 2006).  "[T]o establish individual liability under § 1981, the individual defendant must have been personally involved in the discriminatory action.  Therefore, in order to establish individual liability under § 1981, [Conner] must prove that [Gist]'s discrimination was intentional and that he was personally involved in the discriminating

conduct."  Id. (internal citations and quotation marks omitted).

The Plaintiff has made no factual assertion against Gist in this matter.  Nor has he offered any argument whatever in response to Gist's motion to dismiss his § 1981 claims.  Indeed, Conner states in his response that his "claims on this issue surround the behavior of the Chief/Fire Marshall [sic] Wayne Arnold . . ."  (Pl.'s Resp. to the Defs.' Mot. to [sic] Summ. J. at 9.)  Based on the Plaintiff's failure to allege or prove Gist's personal involvement in any alleged discriminatory action, his individual liability claims under § 1981 are also DISMISSED.

Discrimination Claim Against City.

At the outset, the Court notes the Sixth Circuit's holding in Arendale v. City of Memphis, 519 F.3d 587, 599 (6th Cir. 2008), reh'g & reh'g en banc denied (July 31, 2008) that "no independent cause of action against municipalities is created by § [1981]."  See also Brown v. New York State Dep't of Corr. Servs., 583 F. Supp. 2d 404, 410 (W.D.N.Y. 2008).  Therefore, Conner's § 1981 claims against the City fail.

According to his response to the instant motion, the Plaintiff's Title VII race discrimination claim is based on disparate treatment with respect to the City's failure to properly train him and his May 2007 demotion to Firefighter from the Fire Inspector I position.[1]  "The ultimate question in

---

[1]The Plaintiff also states in his response that his

claims on this issue surround the behavior of the Chief/Fire Marshall [sic] Wayne Arnold toward Plaintiff during the promotion/demotion process, and failing to properly assign work tasks, subjecting the Plaintiff to unequal working conditions and failing to adequately investigate his complaints of discrimination based on race which are continuing in nature.

(Pl.'s Resp. to the Defs.' Mot to [sic] Summ. J. at 9.) (emphasis added.)  However the Plaintiff has offered no evidence whatsoever to support the conclusory assertions placed in italics above. Thus, they are dismissed.

12

every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153, 120 S. Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000).  At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence in order to prevail.  Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009).  Conner bases his claim on the latter, which invokes the McDonnell Douglas/Burdine burden-shifting paradigm.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); Upshaw, 576 F.3d at 584.  Under this analysis, the plaintiff must first establish a prima facie case of race discrimination.  Upshaw, 576 F.3d at 584.  If he is successful, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action.  Id.  In the event the employer carries its burden, it is incumbent upon the plaintiff to show by a preponderance of the evidence that the reason proffered by the employer was pretextual.  Id.  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves, 530 U.S. at 148, 120 S. Ct. at 2109.  Throughout the McDonnell Douglas/Burdine analysis, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Upshaw, 576 F.3d at 584 (citation and internal quotation marks omitted).

    In order to demonstrate a prima facie case of race discrimination, the plaintiff must show that "(1) [he] is a member of a protected group, (2) [he] was subject to an adverse employment decision, (3) [he] was qualified for the position, and (4) [he] was replaced by a person outside of the protected

class." Russell v. Univ. of Toledo, 537 F.3d 596, 604 (6th Cir. 2008). "A plaintiff may also satisfy the fourth prong of a prima facie case showing by adducing evidence that [he] was treated differently than similarly situated non-protected employees." Id. (citation and internal quotation marks omitted). The burden of establishing a prima facie case of discrimination is not an onerous one. Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660 (6th Cir. 2000), *reh'g & suggestion for reh'g en banc denied* (May 4, 2000).

In the instant motion, the City posits that the Plaintiff has failed to demonstrate the third and fourth prongs of the prima facie case. In response, Conner states only that he was "denied training opportunities given to other employees in the nonprotected class," with no citation to the record, and submits that he "should be allowed to present his proof in this case." (Pl.'s Resp. to the Defs.' Mot. to [sic] Summ. J. at 9.) Counsel for the Plaintiff is reminded that "[w]hen the [Rule 56] motion is supported by documentary proof such as depositions and affidavits [as is the case here], the nonmoving party may not rest on his pleadings but, rather, must present some specific facts showing that there is a genuine issue for trial." *See* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Stated differently, the Plaintiff *has* been permitted to present his proof and his response to the dispositive motion was the place to do so.

The Plaintiff's assertion that training opportunities were extended to white employees and not to him goes to the fourth element of the race discrimination claim. In his deposition, Conner alleged that Arnold showed favoritism to Childress. However, according to Arnold's affidavit, Childress took and passed the ICC level I test using the same study guide used by Conner, as well as the level II test. (Arnold Aff. at ¶¶ 3, 8.) Conner, he claimed, was permitted to study for two hours daily at work and attend the Bell Buckle, Tennessee course at City expense, opportunities not

14

extended to other inspectors.  (Arnold Aff. at ¶¶ 9, 17.)  While the Plaintiff declines to admit these facts, he offers no evidence to controvert them.  Conner alleged in his amended complaint and his deposition that Arnold refused to send him to a state preparation class on the grounds that he did not think it necessary.  However, there is no indication that Childress or any other white employee was sent to a state preparation class.  Nor does Conner present any other proof that Childress or other white employees received study materials or training opportunities of any kind that he did not.  Moreover, the Plaintiff acknowledges that the City paid for him to take the test a third time, even though according to City policy only two attempts could be subsidized.

The Plaintiff mentioned in his deposition another white employee, Russ Milton, a Firefighter who took and passed the examination.  (Conner Dep. at 148.)  He overheard Milton go into Arnold's office shortly after Conner had taken and failed the second test and thank him for the "information on a test."  (Conner Dep. at 148.)  When asked in his deposition how he knew Arnold provided Milton with test preparation materials, the Plaintiff related an incident in which Arnold came into his office and asked if he was using his code books.  (Conner Dep. at 151-52.)  He apparently thought Arnold planned to give the books to Milton to study, and refused to part with them.  (Conner Dep. at 152.)  Afterward, the Plaintiff assumed Arnold obtained study materials from someone else.  (Conner Dep. at 152.)  The Plaintiff admitted, however, that he was not told why Arnold asked about the books and had no evidence to support his supposition.  (Conner Dep. at 152.)  Further, he speculated that Arnold and Childress explained the information contained in the code books to Milton and that some other employee, perhaps Milton, utilized online practice tests, but, again, has offered nothing beyond conjecture to support his claims.  (Conner Dep. at 163-72.)  Plaintiff's own opinions and surmise are simply insufficient to support his claims.  *See* Arendale, 519 F.3d at 605

15

("[C]onclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion

for summary judgment"); Lewis v. Philip Morris Inc., 355 F.3d 515, 533 (6th Cir.), *cert. denied,* 543

U.S. 821, 125 S. Ct. 61, 160 L. Ed. 2d 31 (2004) ("In order to survive a motion for summary

judgment, the non-moving party must be able to show sufficient probative evidence that would

permit a finding in his favor on more than mere speculation, conjecture, or fantasy").  Indeed, if

anything, it appears the City made efforts beyond those accorded to other employees in order to

ensure his success.  Based on his failure to establish a prima facie case of race discrimination, the

claim must fail.[2]  *See* Upshaw, 576 F.3d at 584.

Retaliation under Title VII and the THRA.[3]

        Like Title VII intentional discrimination claims which lack direct evidence of discrimination,

retaliation claims based on circumstantial evidence are analyzed under the McDonnell

Douglas/Burdine burden-shifting framework.  Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502

(6th Cir. 2009).  Claims of retaliation brought pursuant to the THRA are analyzed using the same

method.  Hollis v. Yellow Transp., Inc., No. 3:08-0781, 2009 WL 2905583, at *4 (M.D. Tenn. Sept.

3, 2009) (citing Allen v. McPhee, 240 S.W.3d 803, 820 (Tenn. 2007)).  To demonstrate a prima facie

case of retaliation under either statute, the plaintiff must establish that: "(1) he engaged in activity

protected by Title VII; (2) this exercise of protected rights was known to the defendant[s]; (3) the

---

        [2]In light of its finding that Conner failed to establish the fourth prong of the prima facie case, it is unnecessary for the Court to address the City's contention that he failed to present proof as to the third.

        [3]Although the amended complaint does not specify the statutory basis for the retaliation claim, the Court will assume it has been brought under Title VII, § 1981 and the THRA.  The Court will analyze the claim only under Title VII and the THRA as the Plaintiff's § 1981 claims have been previously dismissed herein.

defendant[s] thereafter took a materially adverse action against the plaintiff or subjected the plaintiff to severe and pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action." Lindsay v. Yates, 578 F.3d 407, 418 n.10 (6th Cir. 2009), Hollis, 2009 WL 2905583, at *4.

In his amended complaint, the Plaintiff identified the protected activity as his complaints of discriminatory treatment, specifically the filing of his May 2007 EEOC charge. The adverse action, according to the pleading, was the City's failure to consider him for the position of Driver for the Fire Department in October 2007 as well as negatively affected performance reviews.

In their motion for summary judgment, the Defendants[4] submit that the Plaintiff cannot establish a causal connection between the protected activity and the adverse action. Clearly this is true with respect to the performance reviews, which were completed *prior* to the filing of the grievance and the EEOC charges. However, the City's decision not to include Conner on the Driver eligibility list occurred at some point within six months after the grievance and the first EEOC charge.[5]

In Lindsay, the Sixth Circuit reiterated that

[c]ausation is found where the plaintiff proffers evidence sufficient to raise the

---

[4]The scope of the THRA is broader than that of Title VII and has been interpreted to provide for individual liability for harassment and discrimination, including retaliation. *See* Carter v. Verizon Wireless Servs., LLC, No. 3:05-0554, 2005 WL 2491573, at *1 (M.D. Tenn. Oct. 7, 2005); Rhea v. Dollar Tree Stores, Inc., 395 F. Supp. 2d 696, 705 (W.D. Tenn. 2005); Carr v. United Parcel Serv., 955 S.W.2d 832, 836 (Tenn. 1997), *overruled on other grounds by* Parker v. Warren County Util. Dist., 2 S.W.3d 170, 176 (Tenn. 1999). Therefore, the Court will consider the Plaintiff's claims of retaliation as to both Defendants.

[5]The process was completed in August 2007, but the amended complaint alleges that the City refused to permit Conner to apply for the Driver position in October 2007. (Am. Compl. at ¶¶ 36-37.)

inference that the protected activity was the likely reason for the adverse action. Causation can be proven indirectly through circumstantial evidence such as suspicious timing. Specifically, . . . temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim where an adverse employment action occurs *very close* in time after an employer learns of a protected activity. When the nexus is not very close, we have declined to find a causal connection based on timing alone.

Lindsay, 578 F.3d at 418-19 (citing Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008)) (internal citation and quotation marks omitted) (emphasis in original). In Tennessee, the state Supreme Court, in a 2007 decision, held that "close temporal proximity of a complaint and a materially adverse action are sufficient to establish a prima facie case of causation." Allen, 240 S.W.3d at 823.

It is undisputed that the Driver eligibility list was completed in August 2007, three months after Conner's first EEOC charge was filed and four months following his grievance filing.[6] After Mickey, it is somewhat unclear whether three and four-month gaps between the protected activities and the adverse action are sufficient alone to establish causation in the Sixth Circuit. *See* Vaughn v. Louisville Water Co., 302 F.App'x 337, 349 (6th Cir. 2008) (noting it is a "closer call whether [a] four-month gap is sufficient to show causation after Mickey"). The same may be true for THRA retaliation claims post-Allen. *See* Allen, 240 S.W.3d at 823 (holding that a two-month period sufficient to create inference).

In any event, even assuming that Conner has established a prima facie case of retaliation,[7]

_____

[6]Even though the Plaintiff alleges that the adverse action occurred in October rather than August, the Court will analyze the claim using the earlier date as it is more advantageous to the nonmovant.

[7]The Defendants do not argue that the Plaintiff failed to demonstrate any of the remaining elements of the retaliation prima facie claim beyond causation.

the Court finds that the Defendants have produced a legitimate nondiscriminatory reason for not placing him on the Driver eligibility list, which the Plaintiff has made no showing was pretextual. The reason proffered by the Defendants is Conner's failure to score within the top fifty percent of the applicants for the position in accordance with the personnel policy.  In response, the Plaintiff does not so much as assert, much less demonstrate, that the reason was pretextual.  Therefore, the retaliation claims under Title VII and the THRA cannot stand and are DISMISSED.

Hostile Work Environment under THRA.[8]

Hostile work environment claims under the THRA are analyzed pursuant to the same standards are claims brought under Title VII.  Ellsworth v. Pot Luck Enter., Inc., 624 F. Supp. 2d 868, 875 & n.5 (M.D. Tenn. 2009).  Like the previously discussed claims, the McDonnell Douglas/Burdine burden-shifting analysis also applies here.  Clay v. United Parcel Serv., Inc., 501 F.3d 695, 706 (6th Cir. 2007).  To establish a hostile work environment claim in the race context, a plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] was subjected to unwelcome racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with [his] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability."  Id.  "In order to satisfy the fourth prong of the prima facie case, the plaintiff must present evidence showing that under the totality of the circumstances the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id. at 707 (citations and internal quotation marks

---

[8]As noted by the Court herein, the Plaintiff's Title VII hostile work environment claim has been dismissed previously in this action and § 1981 claims may not be had against a municipality.  Thus, the only surviving hostile work environment claim against the City is that brought under the THRA.

omitted).  "The severe or pervasive requirement has both an objective and subjective component. It requires the court to examine, under the totality of the circumstances, the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance."  Id. (internal citations and quotation marks omitted).

In his amended complaint, the Plaintiff alleged that Arnold "demeaned and humiliated" him and that the Defendants[9] failed to provide him with up-to-date information on test contents and funds for test preparation classes.  In his deposition, he averred that he did not feel welcome in the office area, that groups dispersed when he came near and that Arnold and Childress never invited him to lunch.  (Conner Dep. at 164-66.)  He acknowledged that he never heard anyone use inappropriate language or racial epithets.  (Conner Dep. at 165.)

The Court has already determined that the City's failure to properly prepare the Plaintiff for the Fire Inspector I tests was not racially motivated.  Nor has he made any showing whatsoever, beyond bald assertion, that any of the alleged actions of the Defendants were based on race.[10] Accordingly, he has failed to establish a prima facie case of hostile work environment.  See Clay,

---

[9]The THRA recognizes individual liability for hostile work environment claims.  See Pipkins v. Serv. Corp. Int'l, No. 1:06-CV-201, 2008 WL 1869737, at *13 (E.D. Tenn. Apr. 24, 2008).

[10]In response to the motion for summary judgment, Plaintiff's counsel states in the section addressing the hostile work environment claim that "[a]t this stage of the action the Court must leave its inquiry to the four corners of the Complaint" and that "[t]his Court must take the allegations of the Complaint as true and give the pleader the benefit of all reasonable inferences that can fairly be drawn there from [sic]."  (Pl.'s Resp. to the Defs.' Mot. to [sic] Summ. J. at 10-11.)  The Court finds this clearly incorrect statement of the standard governing summary judgment motions disturbing, particularly when coupled with her failure to offer any support whatsoever for her client's hostile work environment claim at a point in the litigation when such support is essential for maintaining the claim.

501 F.3d at 706.

<u>CONCLUSION</u>

For the reasons set forth herein, the Defendants' motion for summary judgment is GRANTED and this matter is DISMISSED in its entirety.

IT IS SO ORDERED this 19th day of October, 2009.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE